P. SCHOENFELD ASSET MANAGE-
MENT LLC, on behalf of itself and all
others similarly situated, Plaintiff,

v.

CENDANT CORP., Walter A. Forbes, E.
Kirk Shelton, Cosmo Corigliano,
Christopher McLeod and Ernst &
Young, LLP, Defendants.

George Semerenko, on behalf of
himself and all others similarly
situated, Plaintiff,

v.

Cendant Corp., Walter A. Forbes, E.
Kirk Shelton, Cosmo Corigliano,
Christopher McLeod and Ernst &
Young, LLP, Defendants.

Nos. 98–4734(WHW), 98–5384(WHW).

United States District Court,
D. New Jersey.

Aug. 24, 2001.

Douglas Eakeley, Lowenstein Sandler, PC, Roseland, NJ, for E & Y.

Joseph DePalma, Lite DePalma Greenberg & Rivas, LLC, Newark, NJ, for Plaintiff Class.

## OPINION

WALLS, District Judge.

Ernst & Young ("E & Y") moves to certify this Court's May 7, 2001 opinion for immediate appeal under 28 U.S.C. § 1292(b). That opinion held that under the standard delineated by the Third Circuit in *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir.2000), plaintiffs in the above-consolidated cases had sufficiently established the "in connection with" element of a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. Pursuant to Fed.R.Civ.P. 78, this motion is decided without oral argument and is denied.

## BACKGROUND [1]

Plaintiffs are the class of investors who purchased shares of American Bankers Insurance Group, Inc. ("ABI") stock between January 27, 1998 and October 13, 1998 after an announcement by Cendant that it would purchase ABI. Cendant made a tender offer for the purchase of ABI after a

1. This Court will not recite the full background of this matter, which can be found in this Court's and the Third Circuit's earlier opinions. See *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir.2000); *P. Schoenfeld*

bidding war with American International Group, Inc. ("AIG"). Cendant filed a Schedule 14D–1 with the SEC on January 27, 1998, which included an offer by its subsidiary Season Acquisition Corp. to purchase ABI. Cendant later filed several amendments to the 14D–1 from March 1998 until October 1998. Plaintiffs allege that they purchased ABI stock in reliance on the materially false and misleading information contained in Cendant's offer to purchase, its 14D–1 schedules, and other documents and press releases related to the tender offer. They contend that Cendant's false and misleading statements caused the artificial inflation of the price of ABI's shares and that the true value of the securities they purchased was lower than they paid. This Court originally dismissed plaintiffs' claims under Section 10(b). *See P. Schoenfeld Asset Management*, LLC 47 F.Supp.2d 546 (D.N.J.1999) ("*Schoenfeld I*"). This Court held, among other things, that plaintiffs had failed to satisfy the "in connection with" element of Section 10(b) and Rule 10b–5. Plaintiffs appealed, and the Third Circuit reversed. The Circuit held, among other things, that the Court should have applied the standards enunciated by Second and Ninth Circuits when the alleged fraud involves the public dissemination of allegedly misleading financial information. *See Semerenko*, 223 F.3d at 176, citing *In re Ames Dep't Stores Inc. Stock Litig.*, 991 F.2d 953, 956, 965–66 (2d Cir.1993); *McGann v. Ernst & Young*, 102 F.3d 390, 392–93 (9th Cir.1996). The *Semerenko* Court observed that those cases held that

... where the fraud alleged involves the public dissemination of information in a

*Asset Management LLC v. Cendant Corp.*, 142 F.Supp.2d 589, 2001 WL 477096 (D.N.J.2001) ("*Schoenfeld II*"); *P. Schoenfeld Asset Management LLC v. Cendant Corp.*, 47 F.Supp.2d 546 (D.N.J.1999) ("*Schoenfeld I*").

medium upon which an investor would presumably rely, the "in connection with" element may be established by proof of the materiality of the misrepresentation and the means of its dissemination.... Under that standard, it is irrelevant that the misrepresentations were not made for the purpose or the object of influencing the investment decisions of market participants....

223 F.3d at 176. Accordingly, the Circuit directed this Court to determine whether "the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." *Id.* In addition, in response to E & Y's petition for rehearing, the Circuit held that for E & Y's alleged misrepresentations in its financial statements and audit reports to be considered "in connection with" the purchase of ABI stock, plaintiffs would be required to establish that E & Y "knew, or that it had reason to know, that Cendant would use its financial statements and audit reports when making the tender offer for shares of ABI common stock." *Id.* at 177. This Court found that because the company's SEC filings—which were incorporated by reference into the tender offer documents—were the type of information upon which reasonable investors would tend to rely, and it was foreseeable that financial statements would be incorporated by reference into tender offer documents, plaintiffs had established the "in connection with" requirement. *Schoenfeld II*, at 600–02.

E & Y argues first that this Court misapplied the standard articulated in the Third Circuit's opinion with regard to foreseeability with regard to the 1995 and 1996 financial statements, and that this is a controlling question of law as to which there is a substantial ground for dispute which, if reversed, would materially advance the resolution of the litigation. According to E & Y, the foreseeability standard this Court used on remand was broader than what the Third Circuit articulated, because the Circuit stated that it would have to be foreseeable to E & Y at the time the statements were disseminated that the statements might be incorporated into tender offer documents for shares of *ABI stock.* Because the 1995 and 1996 financial statements were disseminated before the tender offer, claims based upon those financial statements cannot have been foreseeable to E & Y.

Second, E & Y contends the Court erroneously applied the "in connection with" test as to the claims based upon the 1997 financial statements, which were issued publicly on March 31, 1998 but were never included in any of the tender offer documents or used by Cendant to solicit the purchase of ABI stock.

Plaintiffs respond that both of E & Y's issues are not controlling issues of law and that there is no substantial ground for a difference of dispute as to the Court's holdings on those issues. Plaintiffs contend that E & Y's ground for dispute is only E & Y's own disagreement with this Court's interpretation of the standard enunciated by the Circuit. Moreover, plaintiffs argue that the 1997 financial statements stand on their own in the public domain. Because of this, plaintiffs maintain that an immediate appeal will not eliminate the need for a trial and thus would not materially advance the termination of the litigation.

## DISCUSSION

*Standard for Certification for Immediate Appeal Under 28 U.S.C. 1292(b)*

 Before an order is certified for appeal, the district court must determine that the following conditions are met:

(1) The order involves a controlling question of law,

(2) as to which there is a substantial ground for a difference of opinion, and

(3) the final resolution of the appeal must have the potential to materially advance the determination of the litigation.

*See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir.1974); 28 U.S.C. § 1292(b). Certification is not mandatory even if the three criteria are met; rather, certification is wholly discretionary. *See Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir.1976). A controlling question of law includes one which "if erroneous, would be reversible error on final appeal." *Id.* at 755. It is not necessary, however, that a reversal of the order would terminate the litigation. As the *Katz* court explained, "controlling" means "serious to the conduct of the litigation, either practically or legally.... And on the practical level, *saving of time of the district court and of expense to the litigants was deemed by the sponsors [of the statute] to be a highly relevant factor.*" *Id.* (emphasis added) (citation omitted). One purpose of Section 1292(b) is " 'to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary....' " *Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J.1993), *quoting Johnson v. Alldredge*, 488 F.2d 820, 823 (3d Cir.1973), *cert. denied sub nom., Cronrath v. Johnson*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974). It is not sufficient for the movant merely to disagree with an adverse ruling of the district court. *See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F.Supp.2d 394, 398 (D.N.J.2000); *Kapossy v. McGraw–Hill, Inc.*, 942 F.Supp. 996, 1001 (D.N.J.1996);

*Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 282 (E.D.Pa.1983).

*Analysis*

### 1. Controlling Question of Law

■ E & Y contends that the issue E & Y seeks to appeal is a controlling question of law, because if reversed, it would require dismissal of "all or nearly all claims against E & Y." E & Y BR. at 5. It argues that because plaintiffs would be required to show that it was foreseeable to E & Y at the time the statements were made that the financial statements would be used by Cendant "when making a tender offer for shares of ABI common stock," claims based upon the 1995 and 1996 financial statements must fall. These financial statements, says E & Y, were made before a tender offer for ABI had been contemplated and thus it could not have been foreseeable that those statements would be used by Cendant in a tender offer *for ABI.* E & Y maintains that it was erroneous for this Court to conclude that the "in connection with" test was met because it was foreseeable that those financial statements would be used by Cendant when making *any tender offer.* E & Y contends this is a "controlling question" because if this Court misapplied the Third Circuit's enumerated test, it would require reversal on appeal.

E & Y also argues that it was erroneous for the Court to find that claims based upon the 1997 audit opinion satisfied the "in connection with" test because they were never included in any tender offer documents issued to ABI investors; E & Y never consented to the use of that opinion in any such materials, and Cendant did not use the opinion in an attempt to purchase ABI stock. E & Y maintains that if the Circuit rejected E & Y's arguments as to this second issue, the first issue with regard to the 1995 and 1996 financial state-

ments would still be a controlling question of law, because the 1997 financial statements would support claims for purchasers of ABI stock only for a two week period from March 31, 1998 until April 15, 1998. E & Y concludes that the first issue is a controlling question of law on its own because the size of the class would be drastically reduced if the Circuit reversed as to the first issue but not the second.

Plaintiffs contend this is not a controlling question of law because E & Y simply disagrees with the district court's determination and wishes the Circuit to have an opportunity to clarify what it meant by its "in connection with" test. However, Plaintiffs argue that Section 1292(b) was not intended to give the appellate court the opportunity to provide "advice on speculative matters." *Link v. Mercedes–Benz,* 550 F.2d 860, 863 (3d Cir.1977). Moreover, plaintiffs maintain that E & Y is simply attempting to manufacture a controlling question of law by arguing that this Court misinterpreted the literal words of the Third Circuit, which is nothing more than a disagreement with this Court's application of the governing standard.

Technically, E & Y may be correct that the two issues it presents with regard to (1) the 1995 and 1996 financial statements and (2) the 1997 financial statements together constitute controlling questions of law. If this Court were to certify both issues for appeal, and the Circuit reversed as to both conclusions, then plaintiffs' claims against E & Y would be completely eliminated. However, this Court agrees with plaintiffs that questions are essentially "manufactured" controlling questions because they represent only E & Y's disagreement with the outcome. Even if these issues were controlling questions of law, the Court would still find that there is no substantial ground for dispute that warrants an immediate appeal.

### 2. Whether There is a Substantial Ground for Dispute

■ E & Y argues that there is a substantial ground for dispute because the Third Circuit stated at three separate points in its opinion that plaintiffs would be required to establish that E & Y knew or had reason to know that its audit opinions would be used by Cendant when making a tender offer "for shares of ABI common stock." 223 F.3d at 177, 187–88. E & Y claims that this Court misapplied that test because it held that the test would be satisfied if E & Y could have foreseen that Cendant might use the financial statements in connection with *any* tender offer in the future. E & Y interprets the Circuit's opinion to mean that it would have to have been foreseeable to E & Y at the time the financial statements were made in 1995 and 1996 that those financial statements might be used in connection with the *specific tender offer for ABI*. Because the ABI tender offer had not yet been contemplated at the time those statements were made, they could not have been "in connection with" the purchase ABI shares. E & Y contends that this Court misapplied the Third Circuit's test when it found that the 1997 financial statements, which were made public on March 31, 1998, were made in connection with the purchase of ABI stock because it was foreseeable that an ABI purchaser would be directed to Cendant's filings with the SEC, which were incorporated by reference in the tender offer documents. E & Y maintains this was an erroneous application of the test because the 1997 financial statements were not explicitly incorporated into the tender offer documents, because E & Y had not given its consent for the use of those financial statements in connection with the ABI tender offer, and because Cendant did not use the 1997 E & Y audit opinion in an attempt to purchase ABI stock.

E & Y concludes that there is a substantial ground for dispute as to these issues because this Court's application of the Third Circuit's test did not follow the literal language used by the Circuit. E & Y argues, "The presumption must be that the appellate court meant what it said. Had the Third Circuit meant to establish a broader and more general standard, it could easily have done so by using more general language appropriate to such a standard." E & Y BR., at 6–7. E & Y further maintains that because the 1995 and 1996 audit opinions were issued long before the ABI tender offer, nothing in those opinions could have "raised the public's interest" in ABI's stock. *See id.* at 7. E & Y references the Circuit's reliance on a Ninth Circuit decision, *McGann v. Ernst & Young,* 102 F.3d 390 (9th Cir.1996). In *McGann,* the Ninth Circuit found that an auditor's report was issued in connection with the purchase or sale of a company's stock because the report related directly to the company's financial results and was "reasonably calculated" to influence the decisions of public investors. *See* 102 F.3d at 394. E & Y interprets *McGann* to "limit[ ] the class of prospective plaintiffs to those purchasers or sellers whose decisions the statements in question were 'reasonably calculated to influence' *at the time they were made."* E & Y Br. at 8 (emphasis in original). Because the 1995 and 1996 financial statements were not material to ABI investors at the time those statements were issued, E & Y contends that those statements cannot be "reasonably calculated to influence" the decisions of ABI investors at the time they were made. *Id.* As a result, E & Y suggests that the standard as applied by this Court was really no standard at all because it "merely requires that it be foreseeable that the audited financial statements might be of interest to investors in some unidentified company at some unknown time in connec-

tion with some unknown future transaction." *Id.* at 8–9. E & Y argues that such a standard would place accounting firms at risk for being sued whenever any company is adversely affected by their statement, regardless of whether it was foreseeable when the accounting firm issued the audit opinion. *Id.* at 9. E & Y states that it is appropriate to grant certification under Section 1292(b) when a district court has been presented with an important legal issue as to which guidance from the circuit would be helpful. Plaintiffs respond that the only difference of opinion is between E & Y and this Court's opinion and that this is insufficient to establish a "substantial ground for a difference of opinion."

This Court agrees with plaintiffs: There is not a substantial ground for dispute as to the correct interpretation of the "in connection with" test described by the Third Circuit.

> A party's disagreement with the district court's ruling does not constitute 'a substantial ground for a difference of opinion' within the meaning of 1292(b). Further, the difference of opinion must arise out of genuine doubt as to the correct legal standard.

*Hulmes v. Honda Motor Co., Ltd.,* 936 F.Supp. 195, 207 (D.N.J.1996). Here, there is no genuine doubt as to the correct legal standard. Plaintiffs are correct that E & Y reads *Semerenko*'s language too literally. E & Y's interpretation is illogical: Had the Third Circuit meant that E & Y would have to have known about or foreseen the tender offer *for ABI in 1995 or 1996,* the Circuit would have held as a matter of law that plaintiffs had failed to establish the "in connection with" element as to claims based upon those financial statements, because the record is clear that the tender offer was not made until 1998. This Court found that the Circuit's test does not require that E & Y have

known at the time about the ABI tender offer in 1995 or 1996, so long as it was foreseeable that the financial statements would later be incorporated into a tender offer. *See Schoenfeld II,* at 599–601. The Court does not find E & Y's mere disagreement with this Court's application of the Circuit's literal language to constitute a substantial ground for a difference of opinion. Furthermore, this Court disagrees with E & Y's interpretation of *McGann:* As this Court discussed in *Schoenfeld II, McGann's* inquiry whether it was foreseeable that investors would rely upon information contained in documents publicly filed with the SEC. *See McGann,* 102 F.3d at 397. *McGann* was not presented with, and did not address, the "foreseeability" issue raised by E & Y here, namely whether a *specific* transaction was required to be foreseeable to satisfy the "in connection with" element. This Court does not read either *McGann* or the Third Circuit's language in *Semerenko* to require such foreseeability.

As to the question involving the 1997 financial statements, E & Y's arguments provide even less ground for a difference of opinion. E & Y contends that there is a substantial ground for a difference of opinion with regard to this Court's finding that because the 14D–1 forms referred investors to Cendant's publicly filed financial information, the 1997 financial statements were made in connection with the sale or purchase of ABI securities. E & Y does not explain why there is a ground for a difference of opinion as to this conclusion, except for its bare assertion that the Court's finding was erroneous because (1) the 1997 audit opinion was never included in the tender offer documents; (2) E & Y never consented to the use of that opinion in such materials; and (3) Cendant did not use the opinion in an attempt to solicit the purchase or sale of ABI stock. None of these three arguments is supported by a discussion of why there is a substantial ground for dispute. Nor does E & Y say why these arguments are supported by the Third Circuit's decision. The Third Circuit did not say that the statements must have explicitly been contained in the tender offer documents. E & Y offers nothing to refute this Court's conclusion that it was sufficient that Cendant's financial information was incorporated by reference in the tender offer documents. *See Schoenfeld II,* at 599. Indeed, as plaintiffs point out, foreseeability cannot be questioned with regard to the 1997 financial statements because the tender offer had already been made, and the tender offer documents already directed the reader to all of Cendant's publicly filed financial information. E & Y cannot logically argue that it was not foreseeable to E & Y at the time the 1997 audit opinion was issued that the statements would be used in connection with the ABI tender offer. Moreover, this Court has already found that there was no basis for E & Y's contention that it must have consented to the use of a particular statement so long as the use of the statement was foreseeable. *See id.* at 600. Finally, the Third Circuit's own opinion stated explicitly that "it is irrelevant that the misrepresentations were not made for the purpose or the object of influencing the investment decisions of market participants." *Semerenko,* 223 F.3d at 176, citing *In re Ames Dep't Stores Inc. Stock Litig.,* 991 F.2d at 965. E & Y's ground for dispute consists essentially of its own disagreement with this Court's conclusion and nothing more. Accordingly, this Court finds there is no substantial ground for dispute as to either issue.

### 3. Whether Immediate Appeal Would Materially Advance the Termination of the Litigation

E & Y argues that a ruling by the Third Circuit would materially advance the

termination of the litigation for the same reasons that the two issues raised are controlling issues of law: If the Circuit were to reverse as to both issues or just the first one, then plaintiffs' claims would either be entirely eliminated or would be restricted to a two-week class period. Plaintiffs respond that because the issue of the 1997 financial statements is so clearcut, that no matter what the Circuit does, the two-week class period will result in the need for a trial in any event. This Court agrees with plaintiffs: Even though there is no substantial ground for dispute, the Court sees no possibility that a trial will be avoided by an immediate appeal, and the appeal would not materially advance the termination of the litigation.

## CONCLUSION

For the foregoing reasons, E & Ys motion to certify this Court's May 9, 2001 opinion for immediate appeal is denied.

**SO ORDERED:**

## ORDER

Ernst & Young ("E & Y") moves to certify this Court's May 7, 2001 opinion for immediate appeal under 28 U.S.C. § 1292(b). Upon consideration of the parties' submissions, and for the reasons stated in the accompanying opinion,

It is on this __ day of August, 2001:

ORDERED that E & Y's motion to certify the May 7, 2001 opinion for immediate appeal is DENIED.