811 F.2d 154
 55 USLW 2401, 1987-1 Trade Cases 67,422
 HORIZONS INTERNATIONAL, INC. and Kenchem, Inc.
v.
BALDRIGE, Malcolm, Secretary, United States Department of
Commerce; United States Department of Commerce; Smith,
William French, Attorney General of the United States; and
United States Department of Justice, Appellants in No. 86- 1135.
Appeal of OCCIDENTAL CHEMICAL CORPORATION.
 Nos. 86-1135, 86-1144.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 17, 1986.
Decided Jan. 20, 1987.
As Amended Jan. 28, 1987.
 
 Daniel R. Shulman (argued), Eleanor M. Dilkes, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., M. Norman Goldberger, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Horizons Intern., Inc.
 Douglas H. Ginsburg, Asst. Atty. Gen., W. Stephen Cannon, Deputy Asst. Atty. Gen., Robert B. Nicholson, Craig W. Conrath, John P. Fonte (argued), Rosemary T. Rakas, Attys., Dept. of Justice, Washington, D.C., Douglas A. Riggs, Gen. Counsel, Eleanor Roberts Lewis, Deputy Chief Counsel for Trade Development, William C. Yue, Atty. Advisor, U.S. Dept. of Commerce, Washington, D.C., for Malcolm Baldrige, et al.
 Bruce W. Kauffman (argued), David H. Pittinsky, Lawrence D. Berger, Carl W. Hittinger, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Occidental Chemical Corp.
 Before SEITZ, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 This appeal is from an order of the district court entered in the first instance of judicial review of a decision of the Secretary of Commerce under Title III of the Export Trading Company Act of 1982, 15 U.S.C. Secs. 4011-4021. Title III authorizes the Secretary to issue certificates of review providing limited antitrust immunity to engage in specified concerted export activity if he finds that the proposed activity meets statutory requirements. 15 U.S.C. Sec. 4013(a). The Secretary acts upon an application after publication in the Federal Register of notice of that application. 15 U.S.C. Sec. 4012(a), (b). The purpose of such a certificate is to provide immunity from criminal or civil action under the antitrust laws for conduct which is specified in the certificate in effect when the conduct occurred. 15 U.S.C. Sec. 4016(a). Parties aggrieved by the grant or denial of an application may within 30 days of the Secretary's determination "bring an action in any appropriate district court of the United States to set aside the determination on the ground that such determination is erroneous." 15 U.S.C. Sec. 4015(a).
 
 
 2
 In the instant case, the Secretary issued such a certificate to Chlor/Alkali Producers International (Chlor/Alkali), a joint venture comprising four major domestic manufacturers of caustic soda and chlorine.[1] The plaintiffs, Horizons International, Inc. and Kenchem, Inc., are traders in caustic soda and chlorine and claim to be aggrieved by that determination. Their complaint names as defendants the Secretary and Department of Commerce and the Attorney General and Department of Justice. One of the joint venturers, Occidental Chemical Company, successfully moved to intervene. Over objections by the government the district court permitted discovery. The court denied the government's motion to dismiss the Attorney General as a party, and denied its motion for summary judgment based upon the administrative record. Based on the expanded record, which included district court discovery materials, the court vacated the certificate of review and remanded the case for further proceedings.[2] The government and the intervenor appeal. We reverse.
 
 I.
 Agency Proceedings
 
 3
 On November 1, 1984, Chlor/Alkali applied pursuant to 15 U.S.C. Sec. 4012(a) for a certificate of review for a proposed joint venture in the export sale of caustic soda and chlorine. Chlorine and caustic soda are produced simultaneously by the electrolysis of salt water. The process yields approximately 1.1 tons of caustic soda for every ton of chlorine. Although they are co-produced, chlorine and caustic soda are used for different purposes and are subject to different demand cycles. Production of both products is geared to chlorine demand because the toxic and corrosive nature of chlorine makes it difficult to store and to transport. The application for the joint venture sought a certificate of review which would permit use of an exclusive sales agent for sale by its members of quantities of both products to be sold exclusively in foreign markets. The joint venture proposed to determine quantities to be sold, to allocate markets, to discuss and to exchange information on export-related topics among the members, to refuse to quote prices to or sell to foreign competitors, and to restrict withdrawal from or entry to the venture. It also proposed to make purchases from nonmembers. As required by 15 U.S.C. Sec. 4012(b)(1), the application was submitted to the Federal Register for publication on November 9, 1984 and published on November 15, 1984. 49 Fed.Reg. 45203 (1984). The notice specified that comments would be received within 20 days after publication.
 
 
 4
 Upon the filing of the application the Secretary was required under 15 U.S.C. Sec. 4013(b) to act upon it within ninety days. Since Title III also provides for expedited review if an applicant indicates a need for prompt disposition, Chlor/Alkali sought expedited review. 15 U.S.C. Sec. 4013(c). But it voluntarily withdrew that request when the Department of Justice indicated that its review could not be completed in the 30 days specified in section 4013(c). Thus agency action on the application was mandated no later than 90 days from November 1, 1984, or January 30, 1985. The participation of the Department of Justice was required because a certificate of review is issued "[i]f the Secretary [of Commerce], with the concurrence of the Attorney General, determines that ... standards [for its issuance] are met...." 15 U.S.C. Sec. 4013(b). Title III requires the Secretary to submit to the Attorney General a copy of the application, applicant information submitted in connection with it, and any other information the Secretary deems relevant. 15 U.S.C. Sec. 4012(b)(2).
 
 
 5
 The plaintiffs filed no comments with the agency. The Department of Commerce reviewed the materials submitted by Chlor/Alkali, interviewed other members of the industry, and made an economic analysis of the probable domestic effects of Chlor/Alkali's proposed conduct. It also reviewed judgments in antitrust cases extant against members of the caustic soda and chlorine industry. The Department's investigation was conducted because Title III mandates the issuance of a certificate
 
 
 6
 to any applicant that establishes that its export trade, export trade activities, and methods of operation will--
 
 
 7
 (1) result in neither a lessening of competition or restraint of trade within the United States nor a substantial restraint of the export trade of any competition of the applicant,
 
 
 8
 (2) not unreasonably enhance, stabilize, or depress prices within the United States of goods, wares, merchandise, or services of the class exported by the applicant,
 
 
 9
 (3) not constitute unfair methods of competition against competitors engaged in the export of goods, wares, merchandise, or services of the class exported by the applicant, and
 
 
 10
 (4) not include any act that may reasonably be expected to result in the sale for consumption or resale within the United States of the goods, wares, merchandise, or services exported by the applicant.
 
 
 11
 15 U.S.C. Sec. 4013(a).
 
 
 12
 On January 25, 1985, with the concurrence of the Attorney General, the Secretary issued a certificate of review, authorizing Chlor/Alkali to engage in the export trade of caustic soda and chlorine on specified conditions. This was final agency action.
 
 II.
 District Court Proceedings
 
 13
 On February 22, 1985 the plaintiffs sued in the district court, alleging that the Secretary and the Attorney General acted erroneously, improperly, and contrary to law in issuing the certificate of review. Specifically it was alleged that the export trade, export trade activities, and methods of operation of Chlor/Alkali would: (1) result in a substantial lessening of competition or restraint of trade within the United States, or a substantial restraint of the export trade of its competitors; (2) unreasonably enhance, stabilize or depress prices of caustic soda or chlorine within the United States; and (3) constitute unfair methods of competition against competitors engaged in the export trade of those chemicals. The complaint set forth a history of antitrust law violations in the caustic soda-chlorine industry and charged an ongoing conspiracy in that industry in violation of Sections 1 and 2 of the Sherman Act. 15 U.S.C. Secs. 1, 2 (1982). It sought a declaration that the defendants have engaged in such violations of the Sherman Act and an order setting aside the issuance of the certificate of review.
 
 
 14
 The plaintiffs undertook discovery going beyond the contents of the administrative record. Pursuant to Fed.R.Civ.P. 26(c)(1), the government moved that discovery not be had beyond the administrative record of the issuance of the certificate of review. It also sought a stay of discovery pending consideration of its summary judgment motion. It was the government's position that review under 15 U.S.C. Sec. 4015 was confined to the record considered by the Secretary and the Attorney General. The motion to limit discovery or stay it until consideration of the motion for summary judgment was denied on April 24, 1985. Extensive discovery ensued.
 
 
 15
 On May 6, 1985 the government moved pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the action against the Attorney General, alleging that 15 U.S.C. Sec. 4015 (1986 Supp.) does not authorize judicial review of his concurrence in the Secretary's determination. The government moved simultaneously for summary judgment, relying on the administrative record which, it urged, amply supported the Secretary's action. These motions were not argued until October 18, 1985. They were denied by an order dated January 3, 1986. In ruling on the motion for summary judgment the trial court considered evidence outside the administrative record. Although the plaintiffs had not moved for summary judgment, the trial court ordered:
 
 
 16
 Chlor/Alkali's certificate of review is vacated and the matter is remanded to the Secretary of Commerce and the Attorney General. On remand, the agencies should consider the questions, set forth below, which raise genuine issues of material fact concerning whether the grant of a certificate of review to Chlor/Alkali was arbitrary, capricious, and an abuse of discretion.
 
 
 17
 624 F.Supp. at 1582-83. The order then listed 5 questions, all of which appear to be predicated upon materials obtained during discovery.
 
 III.
 Appellate Jurisdiction
 
 18
 The plaintiffs urge that we should dismiss the appeals of the government and the intervenor because the challenged decision is not a final judgment. That contention requires an exploration of the application of 28 U.S.C. Sec. 1291 (1982) to a district court order in a proceeding under a statute authorizing judicial review of administrative agency action. In that context interpretations of section 1291 announced in more garden variety civil litigation suits are not controlling. Moreover judicial review of agency action appears in different guises. The governing statute may authorize judicial review of agency action that is essentially adjudicatory. E.g., 42 U.S.C. Sec. 405(g) (1982). It may authorize review of legislative rulemaking which is neither adjudicatory nor adversarial. E.g., 15 U.S.C. Sec. 2618 (1982). It may authorize review of the non-adversarial grant of a license. E.g., 47 U.S.C. Sec. 402 (1982). Each of these different kinds of agency actions may present the issue of finality differently. Any one of them may present it differently by virtue of the type of relief sought and the type of relief ordered. Thus finality holdings in one such context may shed very little light on another.
 
 
 19
 The plaintiffs rely heavily on Bachowski v. Usery, 545 F.2d 363 (3d Cir.1976). In that case an unsuccessful candidate for election to office in a labor organization filed a complaint with the Secretary of Labor alleging that there had been violations of Title IV of the Labor-Management Reporting and Disclosure Act which affected the outcome of the election. He sought to have the Secretary of Labor, who alone under that statute could do so, institute a suit to set aside the election. When the Secretary declined to sue the candidate brought a suit in the district court for an order compelling him to do so. The district court dismissed the complaint. This court reversed.[3] The Supreme Court in turn reversed the judgment of this court, holding that while the Secretary's action in declining to sue was judicially reviewable, such review should ordinarily "be confined to examination of the 'reasons' statement [prepared by the Secretary], and the determination whether this statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary or capricious."[4] The Supreme Court directed this court to enter an order remanding the case to the district court. On remand the district court first ordered the Secretary to submit a supplemental statement of reasons. After reviewing it, the district court remanded for a recount of the ballots by the Secretary. The remand order clearly contemplated further proceedings, for the district court neither granted nor denied the request for an order directing the Secretary to file suit. We held this order to be interlocutory for purposes of section 1291.
 
 
 20
 Bachowski is different from this case in several significant respects. First, Chlor/Alkali, prior to this suit, had in hand a certificate of review vesting it with a significant statutory right to antitrust immunity, whereas Mr. Bachowski had no vested interest in anything. His suit was to obtain what he did not then possess--an opportunity, after the Secretary's lawsuit, to participate in a new election. Second, the action of the district court deprived Chlor/Alkali of its vested statutory right by vacating the certificate of review, while the district court action in Bachowski neither took away nor granted anything. It only postponed final resolution. Third, there are significant differences between the statutory scheme in Bachowski and the Export Trading Company Act such that the role of the district court in each case is entirely different. All these differences suggest that the Bachowski holding, where the order was not as a practical matter final, cannot be regarded as precedential in the present context.
 
 
 21
 Even less closely on point is the two-sentence disposition in Marshall v. Celebrezze, 351 F.2d 467 (3d Cir.1965), which dismissed an appeal from an order remanding the case to the HEW Secretary for the taking of additional evidence. That order plainly was no more than an interlocutory step in an adjudicative proceeding--a dispute over eligibility for benefits. It was analogous to an order granting a new trial. In the instant case the agency's role is not even adjudicative.
 
 
 22
 The opinion of this court which best gives guidance as to the finality of district court orders in administrative review cases is United Steelworkers of America Local 1913 v. Union R.R. Co., 648 F.2d 905 (3d Cir.1981). We held that
 
 
 23
 when a district court's order can be characterized as a final disposition of the present litigation or when dismissal of the appeal will have the practical effect of denying later review, we have recognized that the exercise of appellate jurisdiction under section 1291 may be appropriate.
 
 
 24
 Id. at 909. The issue in the Union Railroad case was whether a proceeding before a Board convened under the Railway Labor Act had been properly conducted. The order appealed from set aside a Board's decision and ordered a new investigation and hearing. We held that the order was final both because it finally decided the legal issue of the propriety of the Board's hearing and finally disposed of the Board's determination, and because further proceedings in the agency might not be reviewable at a later time.
 
 
 25
 This proceeding is not completely on all fours with the Union Railroad case because the functions of a Railway Labor Act Board and those of the Secretary under the Export Trading Company Act are quite different. Nevertheless the standards for finality of district court action announced in that case are useful in this analogous situation. Under the Railway Labor Act awards by boards of arbitration may be set aside by a district court for specified reasons. 45 U.S.C. Sec. 159 (1982). Under the Export Trading Company Act certificates of review may be set aside on the ground that they are erroneous. 15 U.S.C. Sec. 4015(a). In both statutory schemes, therefore, the relief that is authorized is to "set aside" an action of an agency. Union Railroad holds that the district court action is a final disposition of the litigation to set aside the Board action. In this case the order appealed from has set aside Chlor/Alkali's petition for review. Union Railroad also holds, disjunctively, that the action is final if it will have the practical effect of denying later review of the legal issue which the order decides. In this case the order rejects the agency's contention that review is confined to the agency record and its contention that the present record adequately sustains the action. If the agency conducts further proceedings, then clearly the second contention, and probably the first, will be unreviewable later. Thus the two independent reasons identified in Union Railroad for treating a district court order in an agency review proceeding as final apply to this case.
 
 
 26
 We hold, therefore, that the district court order is not interlocutory, but final. We will deny plaintiffs' motion to dismiss the appeal.
 
 IV.
 The Appropriate Record
 
 27
 Before turning to the merits of the plaintiffs' challenge to the certificate of review we must first determine what materials compromise the appropriate record. The plaintiffs, pointing to the language in section 305(a) of Title III authorizing the district court "to set aside the determination on the ground that such determination is erroneous", urge that the district court may conduct what amounts to a trial de novo after the full discovery permitted by the Federal Rules of Civil Procedure.
 
 
 28
 Title III confers on the reviewing court the power to set aside the Secretary's determination either to grant or to deny a certificate of review. In this case the Secretary granted the certificate. No other relief is sought by the plaintiffs than to have it set aside. The trial de novo argument advanced by the plaintiffs appears, however, to be equally applicable, textually, to denials of a certificate of review. If Title III were so construed in suits by unsuccessful applicants, the district court would be making the final decision to grant an exemption from the antitrust laws. Such a construction of Title III might run afoul of the prohibition against imposing nonjudicial duties on Article III courts announced in cases such as Federal Power Comm'n v. Idaho Power Co., 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15 (1952) (modification of license not a judicial function); Federal Radio Comm'n v. General Electric Co., 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969 (1930) (licensing not a judicial function); and Keller v. Potomac Elec. Power Co., 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731 (1923) (ratemaking not a judicial function). The function conferred on the Secretary by the Act is clearly neither adjudication nor rulemaking of general applicability. It is perhaps closest to licensing. Even if it is classified as rulemaking, conferring de novo substantive rulemaking authority on the judicial branch would be unusual. Cf., Bowsher v. Synar, --- U.S. ----, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) (Gramm-Rudman-Hollings Act case).
 
 
 29
 The government urges that section 305(a) of Title III authorizes review pursuant to section 10 of the Administrative Procedure Act (APA). The APA authorizes a reviewing court to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. Sec. 706 (1982). Under section 10, the court may
 
 
 30
 hold unlawful and set aside agency action, findings, and conclusions found to be--
 
 
 31
 (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
 
 
 32
 (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
 
 
 33
 5 U.S.C. Sec. 706(2)(E), (F) (1982). Since the APA by its terms contemplates trial de novo in certain instances, reference to that Act does not significantly advance our analysis of the problem of statutory interpretation. The issue remains what did Congress intend with respect to trials de novo when it enacted Title III of the Export Trading Company Act.
 
 
 34
 Plaintiffs urge that the legislative history of Title III supports their de novo hearing construction. They point to language in House Conference Report No. 97-924:
 
 
 35
 Section 305(a) provides that a review of a grant or denial of an application for a certificate or an amendment thereto or revocation or modification thereof of any person aggrieved by such determination if such suit is brought within 30 days of the determination. Normally the administrative record shall be adequate so that it will not be necessary to supplement it with additional evidence.
 
 
 36
 H.R.Rep. No. 924, 97th Cong., 2d Sess. 27, reprinted in 1982 U.S.Code Cong. & Admin.News 2501, 2511 (emphasis added). The negative inference which should be drawn from the italicized language, according to the plaintiffs, is that in some cases it will be necessary to supplement the administrative agency record.
 
 
 37
 The district court concluded that the italicized language
 
 
 38
 strongly suggests that Congress did envision additional fact-finding in the context of judicial review of agency certification decisions in at least some cases. The statement that "[n]ormally the administrative record shall be adequate so that it will be unnecessary to supplement it with additional evidence" seems clearly to mean that the administrative record may sometimes require supplementation with additional evidence.
 
 
 39
 624 F.Supp. at 1574. Nevertheless the court rejected the plaintiff's contention that the case was appropriate for de novo review. Id. Instead, relying on general principles applicable under the APA, the court concluded that supplementation of the administrative record by plaintiffs' evidence[5] was required. The court reasoned:
 
 
 40
 The plaintiffs have submitted evidence to support their contention that Chlor/Alkali cannot meet the Export Trading Company Act's certification standards. This evidence includes "relevant data" necessary to the determination of Chlor/Alkali's eligibility for certification. Without this data, the agencies will have "failed to consider ... important aspect[s] of the problem...." See Motor Vehicle Manufacturers Association [v. State Farm Mut.,] 463 U.S. at 43, 103 S.Ct. [2856] at 2867 [77 L.Ed.2d 443 (1983) ]. Absent consideration of this additional evidence pertaining to the issues identified in my order, issuance of an export trade certificate to Chlor/Alkali would be arbitrary, capricious, and an abuse of discretion. Due to the time constraints imposed by the short comment and decision periods under which they operated, it is understandable that the agencies would not previously have had the opportunity to consider these matters. Failure to consider them now, however, would be erroneous; that is, it would be arbitrary, capricious, and an abuse of discretion.
 
 
 41
 Id. The effect of the district court's ruling, therefore, was both to permit the plaintiffs to enlarge the administrative record by discovery materials obtained in, and affidavits filed in, the district court proceeding and to require the agency to consider such materials even though they had not been submitted in response to its notice and invitation to comment.
 
 
 42
 We agree with the district court that section 305 of the Export Trading Company Act was not intended to authorize de novo review. Use of the word "erroneous" in that section is not dispositive, for that term is frequently used in administrative law cases and elsewhere to describe agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." E.g., Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); Lukens Steel Co. v. Klutznick, 629 F.2d 881, 886 (3d Cir.1980). Thus we agree that the traditional limits of judicial review applied under section 10 of the APA govern. We conclude, however, that the district court erred in applying those limits. In an analogous licensing case the Supreme Court recently reiterated these limits:
 
 
 43
 "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 [93 S.Ct. 1241, 1244, 36 L.Ed.2d 106] (1973). The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. Sec. 706, to the agency decision based on the record the agency presents to the reviewing court. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 [91 S.Ct. 814, 28 L.Ed.2d 136] (1971).
 
 
 44
 If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.
 
 
 45
 Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). Accord Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (analogous case involving a certification proceeding before the Comptroller of the Currency in which the Supreme Court held that in applying the APA's arbitrary and capricious standard the reviewing court should refrain from supplementing the administrative record). In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971), the Supreme Court recognized that where the bare administrative record did not disclose the factors considered by an agency or the agency's construction of the evidence in its record, the district court may require the administrative officials who participated to give testimony. To this extent, and only to this extent, may courts reviewing agency action pursuant to section 10 of the APA ordinarily go beyond the agency record.
 
 
 46
 The limited exception recognized in Overton Park has no application to this case. The Department of Commerce staff memoranda in the administrative record disclose quite clearly the economic basis for the Secretary's determination. By undertaking to instruct the agency on what evidence should be considered in a proceeding which is at least quasi-legislative the court trespassed into an area of discretion delegated by Congress to the Secretary of Commerce and the Attorney General. Title III of the Export Trading Company Act conferred on those officials the responsibility for compiling the data necessary to make an informed decision. It imposed on those officials a relatively short time period for the completion of that task. The district court correctly observed that the time constraints in Title III made it understandable that the Secretary and the Attorney General would not previously have had the opportunity to consider the matters addressed in plaintiffs' evidence. See 624 F.Supp. at 1574. The court erred, however, in concluding that the time constraints could be set to naught by a district court decision requiring the consideration of an entirely different record.
 
 
 47
 We hold, therefore, that the district court erred in remanding to the Secretary for the consideration of factual materials beyond those found in the agency record.[6]
 
 V.
 The Merits
 
 48
 The plaintiffs urge that even if review is confined to the agency record the order vacating the Secretary's determination is required. The district court agreed, ruling that even looking at the administrative record alone the agencies have not articulated a satisfactory explanation for the Chlor/Alkali certification. See 624 F.Supp. at 1580-81. The court focused on two principal issues: the inclusion of chlorine in the certificate and the alleged failure to consider two outstanding antitrust consent decrees involving the caustic soda-chlorine industry. Before addressing the district court's ruling on the agency's record it is appropriate to describe Title III in its overall antitrust setting.
 
 A.
 The Effect of Title III
 
 49
 In 1918, in the Webb-Pomerene Act, Congress provided that nothing in the Sherman Act of 1890 or the Wilson Tariff Act of 1894 should be construed as declaring illegal an association entered into for the sole purpose of engaging in export trade. 15 U.S.C. 62 (1982). This antitrust exemption was qualified by the provisions that the participants not act in restraint of trade within the United States, not restrain the export trade of any competitor, and not do any act which artificially or intentionally enhances or depresses prices within the United States or substantially lessens competition within the United States. Section 3 of Webb-Pomerene provided an exemption for member companies buying stock in an export association from the merger provisions of section 7 of the Clayton Act. 15 U.S.C. Sec. 63 (1982). The purpose of the Webb-Pomerene Act was to encourage American exports by exempting exports from constraints which placed them at a competitive disadvantage in foreign trade. While at one time Webb-Pomerene associations accounted for a significant percentage of United States exports, by 1979 their impact on the export trade had declined. Webb-Pomerene was widely perceived to have failed in its intended purpose.[7] That perception was reinforced by mounting United States balance-of-payments deficits.
 
 
 50
 One defect in Webb-Pomerene was that while Webb-Pomerene export associations were required to register with the Federal Trade Commission, 15 U.S.C. Sec. 65 (1982), such registration did not confer immunity from public or private antitrust enforcement. Thus members of export associations remained at risk after the fact determinations that their activities were not exempt. That perceived defect was addressed in Title III. The Export Trading Company Act is the product of a compromise between House and Senate bills having similar purposes. The House version would have permitted an export trading association to obtain from the Attorney General a binding advisory opinion about proposed export activity, which would protect the holder from antitrust liability.[8] The Senate version proposed to house the exempting function in the Commerce Department.[9] As enacted Title III requires that the Secretary of Commerce issue the certificate with the concurrence of the Attorney General.
 
 
 51
 Oddly, Title III does not purport to repeal Webb-Pomerene. However several of the limitations on the Secretary's certificating authority found in section 303(a) of Title III parallel those found in section 2 of that 1918 legislation.[10] The Senate Report notes that the section 303(a) standards for certification are to a large extent "a codification of court interpretations of the Webb-Pomerene exemption to antitrust law." S.Rep. No. 27, 97th Cong., 1st Sess. 10 (1981). The exempting language of Webb-Pomerene has over the years received considerable judicial and Federal Trade Commission scrutiny. See, e.g., United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (Webb-Pomerene Act does apply to foreign aid transactions financed by the public); United States v. Minnesota Mining & Mfg. Corp., 92 F.Supp. 947 (D.Mass.1950) (joint manufacturing abroad with agreement not to ship to particular areas not covered by Webb-Pomerene); United States v. United States Alkali Export Ass'n, 58 F.Supp. 785 (S.D.N.Y.1944), aff'd, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945) (jurisdictional issue), aff'd, 86 F.Supp. 59 (S.D.N.Y.1949) (on the merits) (Webb-Pomerene does not limit Department of Justice enforcement against cartel limiting imports to the United States restraining trade within the United States); In re Florida Hard Rock Phosphate Export Ass'n, 40 F.T.C. 843 (1945) (domestic and export activities must be insulated from each other).
 
 
 52
 Section 303(a) borrows, as well, from section 5 of the Federal Trade Commission Act, proscribing approval of activities and methods of operation by an application which "constitute unfair methods of competition against competitors engaged in the export of goods, wares, merchandise or services," 15 U.S.C. Sec. 4013(a)(3). Compare 15 U.S.C. Sec. 45(a)(1) (1982). Cases interpreting the "unfair methods of competition" language of section 5 of the Federal Trade Commission Act are, of course, legion. The Webb-Pomerene Act did not immunize its beneficiaries from enforcement under section 5. To the contrary section 4 of that Act provided that the prohibition against unfair competition in section 5 and the remedies in the Federal Trade Commission Act "shall be construed as extending to unfair methods of competition used in export trade against competitors engaged in export trade, even though the acts constituting such unfair method are done without the territorial jurisdiction of the United States." 15 U.S.C. Sec. 64 (1982). Because it was proposed that Title III would confer on a certificate holder immunity from actions brought pursuant to the Federal Trade Commission Act, Congress incorporated in section 303(a) of that title the same prohibition that applied by virtue of section 4 of Webb-Pomerene.
 
 
 53
 The final exemption standard in section 303(a) provides that the applicants' proposed activities or methods of operation "not include any act that may reasonably be expected to result in the sale for consumption or resale within the United States of goods, wares, merchandise or services exported by the applicants." 15 U.S.C. Sec. 4013(a)(4). Although no identical language appears in Webb-Pomerene, that act implicitly prohibited export and reimportation since it covered only the export trade. The quoted language is in any event similar to that contained in section 2(a) of the Robinson-Patman Act. See 15 U.S.C. Sec. 13(a) (1982). The Commerce Department has suggested that under this standard the Secretary and the Attorney General "will look at whether the applicant reasonably expects the exported goods or services to re-enter the United States for sale or consumption, and if so, whether such sale or consumption within the United States may have a significant domestic impact." Guidelines for the Issuance of Export Trade Certificates of Review, 48 Fed.Reg. 15937, 15940 (1983). This interpretation has been suggested to be consistent with the sparse caselaw interpreting section 2(a) of Robinson-Patman. See Almstedt and Reinsch, The Export Trading Company Act: An Analysis, 2 B.U. Int'l L.J. 157, 185-86 (1983).
 
 
 54
 Thus the substantive standards in section 303(a) for issuance of certificates of exemption are standards which at the time of their enactment were familiar matters in the antitrust law. The certificate procedure differs, however, from familiar antitrust law in that it contemplates not a determination of liability based upon events which occurred in the past, but an advisory opinion that if contemplated activities occur they will not result in antitrust liability. That being the case, the agency has adopted a regulation requiring the applicant for such an advisory opinion to set forth the details of the course of conduct sought to be exempted and to specify the antitrust concern, if any, raised by that export conduct. See 15 C.F.R. Sec. 325.3(b)(10) (1986). The application must include "a description of each member's domestic (including import) and export operations, including the nature of its business, the types of products or services in which it deals, and the places where it does business," id. at Sec. 325.3(b)(5), and "[a] description of the goods or services which the applicant exports or proposes to export under the certificate of review." Id. at Sec. 325.3(b)(7)(i). Information about the geographic areas in the United States in which each applicant sells its goods and services and all information available to the applicant about total sales of such goods and services must also be included. Id. at Sec. 325.3(b)(8)-(10). If, after an application has been submitted, either the Secretary or the Attorney General finds that additional information is necessary in order to make a determination, the applicant must furnish it, thereby suspending the running of time for completing the determination. Id. at Sec. 325.3(g). The information required of applicants appears to be reasonably calculated to permit the rendition of the requested opinion on the legality of the proposed conduct.
 
 
 55
 The consequences of the issuance of a certificate are specified in section 306 of Title III. As noted at the outset of the opinion, "no criminal or civil action may be brought under the antitrust laws against a person to whom a certificate of review is issued which is based on conduct which is specified in, and complies with the terms of, a certificate ... in effect when the conduct occurred." 15 U.S.C. Sec. 4016(a). Thus neither the government nor a private party suing under section 4 or 12 of the Clayton Act, 15 U.S.C. Secs. 15, 22 (1982), can sue claiming that conduct which complies with the certificate violates the Sherman Act, the Wilson Tariff Act, or any other federal or state antitrust law. On the other hand Title III creates a new and independent private cause of action:
 
 
 56
 Any person who has been injured as a result of conduct engaged in under a certificate of review may bring a civil action for injunctive relief, actual damages, the loss of interest on actual damages, and the cost of suit (including a reasonable attorneys' fee) for the failure to comply with the standards of section 4013(a) of this title.
 
 
 57
 15 U.S.C. Sec. 4016(b)(1). In such an action there is a presumption that conduct specified in and complying with a certificate of review does comply with those standards. 15 U.S.C. Sec. 4016(b)(3). A private plaintiff who loses a section 306 suit is liable for costs and attorneys' fees. 15 U.S.C. Sec. 4016(b)(4).
 
 
 58
 Thus the consequences in private antitrust enforcement of the issuance of a certificate of review are as follows:
 
 
 59
 (1) the legal standards set forth in section 303(a) are a complete substitute for legal standards which would otherwise apply by virtue of the antitrust laws;
 
 
 60
 (2) private plaintiffs may sue to enforce the section 303(a) standards, seeking either injunctive relief or damages;
 
 
 61
 (3) private plaintiffs must in such a suit overcome the presumption in section 306(b)(3) that conduct complying with a certificate comports with the legal standards of section 303(a);
 
 
 62
 (4) private plaintiffs may recover only actual, not treble damages for a violation of a section 303(a) legal standard;
 
 
 63
 (5) private plaintiffs who win may recover attorneys' fees and costs of suit, but are liable for attorneys' fees and cost of suit if they lose;
 
 
 64
 (6) conduct not in compliance with a certificate is not exempted from treble damage recovery under section 4 of the Clayton Act.
 
 
 65
 A private litigant can, therefore, in a suit against a certificate holder, go behind the Secretary's advisory opinion that the conduct specified in the certificate is legal under section 303(a) if the litigant overcomes the 306(b)(3) presumption. But the litigant cannot obtain treble damages.
 
 
 66
 The consequences of issuance of a certificate of review in public antitrust enforcement are broader. Under section 304(b)(2) a certificate may be revoked if the Secretary or the Attorney General determines that activities of the holder no longer comply with section 303(a). 15 U.S.C. Sec. 4014(b)(2). While they are outstanding, however, the only public antitrust enforcement which is authorized is a suit by the Attorney General pursuant to section 15 of the Clayton Act "to enjoin conduct threatening clear and irreparable harm to the national interest." 15 U.S.C. Sec. 4016(b)(5). Apparently this includes conduct in compliance with a certificate since conduct not in compliance is not exempt from the antitrust laws. It is not clear whether in an action by the Attorney General for injunctive relief against a certificate holder the legal standards of section 303(a), to the extent they differ from other antitrust laws, will be deemed to define the national interest.
 
 
 67
 Summarizing, the holder of a certificate is insulated both from private treble damage actions and from government criminal prosecutions. A private cause of action for actual damages or injunctive relief can be successfully prosecuted against the certificate holder only if the plaintiff can overcome the presumption that the Secretary of Commerce correctly issued the certificate. Public enforcement by the Attorney General in an action for injunctive relief is available to some as yet undetermined extent.
 
 
 68
 In an action against a certificate holder pursuant to section 306(b)(1) the plaintiff will have the procedural advantages of the Federal Rules of Civil Procedure. Aside from the presumption created by section 306(b)(3), no particular deference is owed in such an action to the agency determination. The suit will be decided by the district court on the record made in that court. Thus in a section 306(b)(1) suit the factual record to which the section 303(a) standards will be applied may be entirely different from that on which the agency acted. This also appears to be the case in an action by the Attorney General pursuant to section 306(b)(5).
 
 B.
 Chlor/Alkali's Application
 
 69
 The instant action is not brought against Chlor/Alkali pursuant to section 306(b)(1). It is brought against the Secretary and the Attorney General pursuant to section 305(a). In Part IV above we hold that in a section 305(a) judicial review proceeding the district court must decide on the basis of the administrative record. As we note in Part I above, the agency record consists of materials submitted by Chlor/Alkali, the Commerce Department's economic analysis, interviews with other members of the industry, and extant antitrust consent decrees in the caustic soda-chlorine industry.
 
 
 70
 In determining that the joint venture would facilitate the ability of members of Chlor/Alkali to export, the Commerce Department initially found that the relevant domestic market for caustic soda manufactured by those members was the Central United States, while the relevant market for their chlorine was a three-state Gulf Region. Commerce Department staff concluded that these markets are concentrated and that each Chlor/Alkali member is a large corporation. They concluded, nevertheless, that the joint venture would enhance the members' ability to compete for export contracts because Chlor/Alkali's combined market share amounted to only 14 percent for caustic soda and 11 percent for chlorine. They noted, as well, that up to 70% of individual members' output was committed to domestic use, making it difficult for such individual members to compete effectively for large export contracts. Given the small increase in concentration that would result from the joint venture, coupled with the fact that the joint venture's potential customers are large sophisticated buyers, the staff concluded that Chlor/Alkali would not possess substantial market power and that its export activities would not be likely to affect domestic competition adversely. Finally, the staff concluded that the outstanding Chlor/Alkali consent decrees do not prohibit the activities sought to be certified. The staff noted, as well, that if a conflict arose between the certificate and an antitrust decree, the decree would control.
 
 
 71
 The Secretary adopted the staff's conclusions and its recommendation that a certificate be issued. Thus the staff memorandum contains the Secretary's findings and conclusions. The Department of Justice did not send any written recommendation to the Secretary. Under 15 C.F.R. Sec. 325.5(c)(3) (1986) this inaction constitutes concurrence by the Attorney General within the meaning of section 303(b). The Secretary therefore issued the certificate on January 25, 1985.
 
 
 72
 The certificate specifies the activity that Chlor/Alkali may engage in, such as setting export prices and quantities. It also contains several conditions and restrictions. For example it requires that an attorney be present and maintain a complete and accurate record whenever discussions take place about price, sales, contracts, etc. It also prohibits any discussions of domestic price or output information and warns members that engaging in any conduct not specified in the certificate is subject to the normal application of the antitrust laws. New members cannot be added to the joint venture unless the Secretary amends the certificate.
 
 C.
 Plaintiffs' Objections
 
 73
 (1) Procedural
 
 
 74
 Plaintiffs object that the Commerce Department notice of the application was faulty in that it was not published in the Federal Register within ten days of its filing. See 15 U.S.C. Sec. 4012(b)(1). The district court held that since the Secretary submitted the notice to the Federal Register on November 9, 1984, and could not control its publication schedule, the delay in publication should have no effect on the validity of the certificate. See 624 F.Supp. at 1568 n. 13. Plaintiffs also object that the notice as published called for comment within eighteen days rather than the twenty days provided in 15 C.F.R. Sec. 325.5(b) (1986). The district court held that since the failure to comment did not affect plaintiffs' standing to seek judicial review, the shortened comment period should not be regarded as significant. Id. We agree that given the nature of the function performed by the Secretary of Commerce and the Attorney General under the Title III statutory scheme the district court's rulings were correct.
 
 
 75
 (2) Substantive
 
 
 76
 The plaintiffs, traders in caustic soda and chlorine, contend that for two substantive legal reasons the certificate should not have issued. First, plaintiffs contend that the members of Chlor/Alkali have had a history of engaging, in the domestic market, in allocating customers, stabilizing prices, limiting output, and boycotting traders like them. Second, they urge that Chlor/Alkali as a powerful new entry in the export market will have the power to exclude competitors, including the plaintiffs, from that market. Thus, they urge, the Secretary of Commerce erred in concluding that the certificate meets the legal standards of section 303(b)(1) and (3). A separate objection, more factual in nature, is that the certificate covers the export of chlorine, when in fact none of the members have in the past exported chlorine in significant quantities.
 
 
 77
 We find no merit in the plaintiffs' legal objections. After calculating the Herfindahl-Hirshman Index for the relevant domestic markets, the Commerce Department staff noted that both the chlorine and the caustic soda markets are highly concentrated. Thus, the staff noted there were structured characteristics suggesting a strong potential for oligopolistic problems. Nevertheless the staff concluded that the proposed joint venture would not be a proximate cause for giving rise to such problems because of the relatively small share of the market held by the members for each product. Were the members to merge, the staff noted, the Herfindahl measures would increase by 140 for caustic soda and 93 for chlorine, which would not suggest that Chlor/Alkali would have price-setting power in the United States even if the joint venture ignored the limitations in the certificate designed to prevent coordination in domestic pricing.[11] The staff noted as well that customers of the Chlor/Alkali members were sophisticated buyers. Moreover the Secretary considered the history of antitrust noncompliance allegedly reflected in the extant antitrust consent decrees, noting that they applied only to the United States and by their terms exempted Webb-Pomerene Act activities.
 
 
 78
 As to the factual contention that chlorine should not have been included, the administrative record discloses a careful consideration of that issue. Chlorine is a necessary by-product of the manufacture of caustic soda. Despite the difficulty of storing and exporting it, chlorine is exportable. According to the record one member of the joint venture, Occidental Chemical Corporation, is exporting it. Vulcan Materials Company seeks through the joint venture to establish a chlorine export market. Moreover the 1986 U.S. Industrial Outlook, U.S. Department of Commerce, shows that export of chlorine in 1985 increased. Thus there is record evidence that Chlor/Alkali is likely to export chlorine.
 
 
 79
 Given the relatively short time frame specified by Congress for completing an investigation for the purpose of determining whether to issue a certificate, the material obtained by the Commerce Department from the applicant and elsewhere, and the careful analysis made in the Commerce Department staff memorandum which the Secretary adopted, we cannot find any procedural defect in the issuance of the certificate. The agency's explanation as to why the certificate complies with the standards of section 303(a) is carefully reasoned. The reasons relied on are supported in the record. Thus the determination to issue the certificate was not arbitrary, capricious, an abuse of discretion, or a violation of the Export Trading Company Act. See 5 U.S.C. Sec. 706 (1982). The district court's order setting it aside must therefore be reversed.
 
 VI.
 
 80
 The government also contends that the trial court erred in denying the Rule 12(b)(6) motion of the Attorney General to be dismissed as a party because Title III does not authorize judicial review of his concurrence in the Secretary's decision. The district court held that since the certificate could only be issued with the concurrence of the Attorney General, the agency action which is reviewed includes that concurrence. The court therefore found him to be a necessary party. 624 F.Supp. at 1571. The government urges that although the certificate cannot issue unless the Attorney General concurs, section 305(a) provides only for judicial review of the Secretary's determination.
 
 
 81
 At first glance one might conclude that the dispute over this issue is much ado about nothing. The plaintiffs, who seek to have the certificate of review set aside, can certainly obtain such relief in an action against the Secretary alone. Thus the district court's conclusion that the Attorney General is a necessary party in this case probably is wrong. In addition it is plain that the Attorney General played a de minimis role in the agency action of which plaintiffs complain. If his concurrence had been withheld he might well be a necessary party when an applicant sought judicial review.
 
 
 82
 We find the district court's reliance on the Attorney General's concurrence to be unpersuasive on the propriety of making the Attorney General a party. There is elsewhere in the Act a provision suggesting that the Attorney General ought not be included. We refer to the provision in section 306(b)(5) authorizing suits by the Attorney General pursuant to section 15 of the Clayton Act. That provision seems to suggest that the Attorney General can concur in the issuance of a certificate and later sue to enjoin some of the activities it authorizes. If the Attorney General were to be a party to a section 305(a) judicial review proceeding the effect of a judgment in such a proceeding would have to be considered in a later section 306(b)(5) suit. This suggests construing section 305(a) so as to make only the Secretary of Commerce a party. We conclude that Congress intended that the Attorney General not be a necessary party to a section 305(a) proceeding when judicial review is sought by an objector because his presence is not required for complete relief. We leave for later consideration the question of the Attorney General's party status when an unsuccessful applicant seeks judicial review.
 
 VII.
 
 83
 The judgment appealed from will be reversed and the case remanded for the entry of an order entering summary judgment in favor of the Secretary of Commerce on the basis of the agency record, and granting the Attorney General's motion to dismiss.
 
 
 
 [1]
 The joint venturers are B.F. Goodrich Company, Kaiser Aluminum and Chemical Corp., Occidental Chemical Corporation and Vulcan Materials Company
 
 
 [2]
 Horizons Int'l Inc. v. Baldridge, 624 F.Supp. 1560 (E.D.Pa.1986)
 
 
 [3]
 Bachowski v. Brennan, 502 F.2d 79 (3d Cir.1974)
 
 
 [4]
 Dunlop v. Bachowski, 421 U.S. 560, 572-73, 95 S.Ct. 1851, 1860, 44 L.Ed.2d 377 (1975)
 
 
 [5]
 The district court described plaintiffs' evidence as follows:
 Plaintiffs' evidence primarily consists of affidavits and discovery materials tending to establish the existence of a price-fixing conspiracy and other anticompetitive practices in the chlor-alkali industry. The evidence suggests that members of Chlor/Alkali are participants in this conduct. Plaintiffs also proffer an economist's critique of the agencies' economic analysis of the potential domestic effects of Chlor/Alkali's activities, as well as materials pertaining to a Federal Trade Commission proceeding against B.F. Goodrich. Plaintiffs also ask me to take judicial notice of reported antitrust decisions against members of the chlor-alkali industry.
 
 
 [624]
 F.Supp. at 1575 (footnotes omitted)
 
 
 [6]
 This holding is consistent with the agency regulations which provide in relevant part:
 (c) Record for judicial review. For purposes of judicial review, the record shall include all information presented to or obtained by the Secretary which had a bearing on the determination, the determination itself, the supporting statement setting forth the reasons for the determination, and the Attorney General's response to the Secretary indicating concurrence or nonconcurrence.
 
 
 [15]
 C.F.R. Sec. 325.11(c) (1986)
 
 
 [7]
 The Report to the President and the Attorney General of the National Commission for the Review of the Antitrust Laws and Procedures 298 (1979) recommended that Congress repeal Webb-Pomerene because it had never in over sixty years materially promoted exports. "The common feature of export associations today," noted the Commission, "is not their performance or efficiency or cost reducing functions, but rather their pursuit of traditional cartel activities." Id. at 297. As noted in the text, views hostile to the exemption did not prove to be persuasive in Congress
 
 
 [8]
 H.R.1799, 97th Cong., 2d Sess., 128 Cong.Rec. H 4654-58 (daily ed. July 27, 1982)
 
 
 [9]
 S.734, 97th Cong., 1st Sess., 127 Cong.Rec. S 3667-71 (daily ed. Apr. 8, 1981)
 
 
 [10]
 
 Webb-Pomerene Title III
 "not in restraint of "result in neither a
 trade within United substantial lessening of
 States, and not in competition or restraint
 restraint of the export of trade within the
 trade of any domestic United States nor a
 competitor" substantial restraint of
 the export of any
 "not . . . do any act competitor"
 which artificially or
 intentionally enhances "not unreasonably
 or depresses prices enhance, stabilize, or
 within the United depress prices within
 States" the United States"
 
 
 [11]
 The certificate imposes virtually every type of restriction mentioned in the Guidelines issued with respect to Title III. See 50 C.F.R. Secs. 1795-96 (1985)